UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EIREOG INNOVATIONS LTD., <br><br> Plaintiff, <br><br> v. <br><br> DELL TECHNOLOGIES INC. AND DELL INC., <br><br> Defendants. | Case No. 1:24-cv-00416-ADA <br><br> **JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD., <br><br> Plaintiff, <br> v. <br> HP INC., <br><br> Defendant. | Case No. 1:24-cv-00644-ADA <br><br> **JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD., <br><br> Plaintiff, <br> v. <br> ORACLE CORPORATION, <br><br> Defendant. | Case No. 1:24-cv-00697-ADA <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. '399 PATENT DISPUTED TERMS ...................................................................... 1

    A. "a unified cache", '399 Patent Claim 14 .................................................. 1

III. '626 PATENT AND '870 PATENT DISPUTED TERMS .................................... 1

    A. "processor", '626 Patent Claims 1, 14; '870 Patent, Claims 1, 12, 19 ...... 1

        1. The Patents Teach That the Interrupt Controller May be Co-Located with the Processor ................................................................ 2

        2. The "Processor" Is Not Limited to a Processor Core ....................... 4

    B. "interrupt identifier", '626 Patent Claims 1, 14 .......................................... 6

    C. "partition identifier", '626 Patent Claims 1, 14; '870 Patent Claims 1, 12, 19 ......... 7

    D. "the first identifier", '626 Patent Claims 9, 11 .......................................... 11

    E. "the hypervisor", '626 Patent Claim 7 ...................................................... 13

IV. CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004) ............................................................................. 5

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
   35 F.4th 1345 (Fed. Cir. 2022) ........................................................................... 12

*Demaray LLC v. Intel Corp.*,
   No. W-20-CV-00634-ADA, 2023 WL 3765547 (W.D. Tex. June 1, 2023) .............. 4

*Fotomedia Techs., LLC v. AOL, LLC,*
   2009 WL 2175845 (E.D. Tex. July 21, 2009) ........................................................ 7

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
   750 F.3d 1304 (Fed. Cir. 2014) ............................................................................. 6

Network Caching Technology, LLC v. Novell, Inc.,
   2003 WL 21699799 (N.D. Cal. 2003) .................................................................... 9

*Nevro Corp. v. Bos. Sci. Corp.*,
   955 F.3d 35 (Fed. Cir. 2020) ............................................................................... 12

Omega Eng'g, Inc. v. Raytek Corp.,
   334 F.3d 1314 (Fed. Cir. 2003) ............................................................................. 4

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001) ........................................................................... 13

*RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*,
   326 F.3d 1255 (Fed. Cir. 2003) ............................................................................. 5

*STMicroelectronics, Inc. v. Motorola, Inc.*,
   308 F. Supp. 2d 754 (E.D. Tex. 2004) ................................................................... 9

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
   15 F.4th 1136 (Fed. Cir. 2021) ............................................................................. 4

*Unwired Planet, LLC v. Apple, Inc.*,
   829 F.3d 1353 (Fed. Cir. 2016) ............................................................................. 6

## I. INTRODUCTION

Plaintiff EireOg Innovations Ltd. ("EireOg") submits this sur-reply claim construction brief concerning U.S. Patent Nos. 8,117,399 ("the '399 Patent"), 9,436,626 ("the '626 Patent"), and 9,442,870 ("the '870 Patent") in response to Defendants' Reply brief (Dkt. No. 48, "Reply").

## II. '399 PATENT DISPUTED TERMS

### A. "a unified cache", '399 Patent Claim 14

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary  Plain and ordinary meaning | "a cache configured to store both instruction information and data information" |

In an effort to limit the number of disputes for the Court, EireOg agrees that "a unified cache" in claim 14 of the '399 Patent means "a cache configured to store both instruction information and data information." However, EireOg's agreement is not premised on and in no way adopts Defendants' reasoning and arguments concerning this term, which EireOg does not agree with.

## III. '626 PATENT AND '870 PATENT DISPUTED TERMS

### A. "processor", '626 Patent Claims 1, 14; '870 Patent, Claims 1, 12, 19

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary  Plain and ordinary meaning | "processor core not including an interrupt controller" |

Defendants argue that the term "processor" should be (1) construed to mean a processor "not including an interrupt controller," and (2) limited to a "processor core." Defendants fail to demonstrate any lexicography or disclaimer that justifies their narrowing construction. Defendants' proposed construction should be rejected, and "processor" should be construed in light of its plain and ordinary meaning.

1

### 1. The Patents Teach That the Interrupt Controller May be Co-Located with the Processor

Defendants argue that the claim term "processor" must be construed to mean a processor that does not include an "interrupt controller." Reply at 6-9. Specifically, Defendants assert that the claims recite "interrupt controller" as separate and distinct from the "processor." *Id.* at 6. Defendants further argue that every embodiment depicted in the patents shows the "processor" as separate from the "interrupt controller." *Id.* at 6-7. Defendants are wrong.

The '626 and '870 Patents expressly teach that the "processor" may incorporate an "interrupt controller." For example, Defendants concede (as they must) that the specification teaches that the "processor" and "interrupt controller" may be "on a single integrated circuit." *Id.* at 6; *see also* '626 Patent at 6:38-41, '870 Patent at 4:67-5:3. Nor can Defendants contest that the specification teaches embodiments involving hardware virtualization. Reply at 18; *see also* '870 Patent at 5:16-34 (providing that "hardware resources . . . may be emulated or abstracted with a software implementation that is executed on a single hardware platform (e.g., a physical processor) to behave like the emulated hardware resource."); '626 Patent at 6:48-52 (similar). As such, the specification contemplates, *inter alia*, an emulated (software-based) interrupt controller which may be located at the processor. Accordingly, there is no basis for Defendants' proposed construction to preclude the "interrupt controller" from the "processor" based on the teachings of the patents.

Defendants attempt to justify their construction based on remarks made by the applicant during prosecution, arguing those remarks amount to a clear and unmistakable disavowal of claim scope. Reply at 7-9. Defendants particularly focus on the first sentence of the second paragraph in the following remarks:

> [T]he Examiner asserts that Vembu's "local advanced programmable interrupt controller (LAPIC)" 114a, 114b, 114c meets the claim requirement of processing the interrupt package against partitions running on targeted virtual processors at the processor by comparing the first priority value and first partition identifier against at least a stored priority level and stored partition identifier retrieved from one or more **special purpose registers at the processor** to determine on a partition basis if the first physical interrupt request is blocked or forwarded to a targeted virtual processor.
>
> In reply, Applicant respectfully points out that Vembu's cited <u>interrupt controller</u> (e.g., LAPIC1 114a) does <u>not</u> meet the claim requirement of a 'processor' for managing interrupts, nor is there any disclosure that Vembu's partitioned platform system 100 includes any 'special purpose registers at the processor' at any processor core, such as CPU 107a-d, which are used to determine on a partition basis if a physical interrupt request is blocked or forwarded to a targeted thread or virtual processor. *See*, Vembu, Figure 1. At best, Vembu suggests that the "interrupt controller" (e.g., LAPICl) may include a register for the partition identifier (e.g., PAR-IDl 116a), but **Vembu nowhere discloses that "special purpose registers,"** such as a "first hardware register" (for storing partition information) and a "priority hardware register" (for storing priority level values), is **included at either the processor core 107 or interrupt controller 114**.

Ex. 5 at 7 (underlining in original);[1] Ex. 6 at 11 (similar). The term "processor" in the second sentence refers to the use of the term "processor" in the first sentence. Read in context, it is apparent that the applicant argued that neither the LAPIC1 of Vembu nor the CPU's of Vembu include the recited special purpose registers *at the processor* and, therefore, the claims are not anticipated. That is, because the LAPIC of Vembu pulls identifiers from outside the processor, it does not manage the interrupts <u>*at the processor*</u> in the manner required by the claims. The Examiner found this argument to be persuasive. Ex. B at 7; Ex. C at 7.

Even were this not the case, Defendants' disclaimer arguments still fail. First, the Examiner did not rely upon Vembu's LAPIC1 as teaching the "interrupt controller" of the claims. Rather the examiner relied upon "interrupt manager 104" as teaching the interrupt controller. Ex. 7 at 4; Ex.

---

[1] All emphasis added unless stated otherwise.

8 at 2. Any statement regarding the LAPIC1, thus, does not bear upon whether the "interrupt controller" of the claims must be physically (or in some other fashion) separate from the processor.

Second, the statement that "Vembu's cited interrupt controller (e.g., LAPIC1 114a) does not meet the claim requirement of a 'processor' for managing interrupts," does not state that a "processor" may not be co-located with an "interrupt controller." At most, the applicant stated that a LAPIC is not a processor. There is no clear inference to be drawn, and Defendants' proposed construction should be rejected. *See, e.g.*, *Demaray LLC v. Intel Corp.*, No. W-20-CV-00634-ADA, 2023 WL 3765547, at *9 (W.D. Tex. June 1, 2023) ("the Court concludes that the meaning of the statement is ambiguous enough that it does not meet the threshold of a 'clear and unmistakable' disclaimer.").

### 2. The "Processor" Is Not Limited to a Processor Core

Defendants additionally argue that the term "processor" should be limited to a "processor core." Reply at 9-12. Defendants argue that, during prosecution, the applicant made statements arguing that the term "processor" means a "processor core." *Id.* at 9-10. Prosecution disclaimer arises where a patentee "has unequivocally disavowed a certain meaning to obtain [a] patent" in a way that is "clear and unmistakable." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1141 (Fed. Cir. 2021) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324-26 (Fed. Cir. 2003)). Here, there is no such "clear and unmistakable" disclaimer.

In the applicant's arguments (regarding the '870 Patent) relied upon by Defendants, applicant uses the term "core" several times. Ex. 5 ('870 Patent Response to Rejection). But none of those references to a "core" concerned the claimed "processor," and certainly not in a manner

that would justify limiting the term to a "processor core."[2] And, notably, the statement regarding "special purpose registers" quoted and emphasized in Defendants' brief (Reply at 9), is absent from the prosecution history of the '626 Patent (which is otherwise generally similar). Ex. 6 at 10 (and generally). To that end, there is no basis to find any disclaimer that would limit the scope of the "processor" of the '870 Patent, let alone the scope of the "processor" of the '626 Patent which did not include the same statements from the applicant.

Defendants' second argument is that the use of the term "processor core" in the specification more often than "processor" alone should limit the construction of "processor." Reply at 11. This argument is not persuasive. First, the specification teaches, for example, an embodiment where "the processor(s) 112 include N processor cores." '870 Patent at 5:4-5; '626 Patent at 7:12-13 (similar). The fact that a "processor" is taught with multiple ("N") "processor cores" clarifies that the terms are not equivalent. Second, the location of certain features at a processor core are merely preferred embodiments. But "a patent claim term is not limited merely because the embodiments in the specification all contain a particular feature." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 865 (Fed. Cir. 2004); *see also RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003) (claims "not usually limited in scope simply to the preferred embodiment."). Defendants' proposed construction should be denied on this basis as well.

---

[2] For example, the first reference to "core" is limited to the location of the special purpose hardware registers. Ex. 5 at 6. The second concerns "conventional," prior art systems. *Id*. The third, fourth and seventh discuss specific structures of Vembu (e.g., "core 107"). *Id*. at 7, 8. The fifth and sixth uses of the term "core" quote the specification's general teachings regarding partitioning. *Id*. at 8.

B. **"interrupt identifier", '626 Patent Claims 1, 14**

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | "a value that uniquely identifies an interrupt request" |
| Plain and ordinary meaning | |

Defendants argue that the patent applicant acted as his own lexicographer with respect to the term "interrupt identifier." Reply at 12. Defendants are wrong. "The standards for finding lexicography or disavowal are 'exacting.'" *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). To act as one's own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id*. That is not the case here.

Defendants rely on the specification's description of "step 605" of "example flow diagram 600." '626 Patent at 13:42-43, 14:15-19. But that disclosure is plainly made in connection with the exemplary embodiment of Figure 6:

> Referring now to FIG. 6, there is depicted an ***example flow diagram 600*** of a method for processing an interrupt request at a partitioned interrupt controller and target processor ***in accordance with selected interrupt controller embodiments*** of the present invention.

*Id.* at 13:42-46. The specification further explains the following in connection with Figure 6:

> At step **605**, an interrupt identifier, or ID, corresponding to the top interrupt request is generated. The interrupt identifier or tag may be generated in any desired manner, and can be any value that uniquely identifies the interrupt request. The interrupt ID is guaranteed to be unique for a given partition . . .

*Id.* at 14:15-19. This single disclosure hardly supports a finding that the patentee acted as a lexicographer or that the term "interrupt identifier" should otherwise be limited to the exemplary embodiment depicted in Figure 6. *See Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) (holding that "it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning.").

Defendants additionally seek to rely upon *Fotomedia Techs., LLC v. AOL, LLC,* 2009 WL 2175845 (E.D. Tex. July 21, 2009). There, the court construed the term "identifier" to mean "information uniquely identifying image data" because a non-unique identifier would "fail in its utility by the patentee's own definition." *Id.* *9. There is no basis for a similar determination here. Defendants' argument relies on certain teachings regarding "explicit" identifiers. Reply at 13-14 (citing the '626 Patent at 2:62-67 and 6:18-20). The cited teachings, however, do not teach that a nonunique identifier would fail to achieve the claimed functionality.

The independent claims at issue (claims 1 and 14 of the '626 Patent) both recite the limitation an "interrupt identifier corresponding to the first interrupt request." This function is readily understood in light of the patent's teachings. In view of the foregoing, the term "interrupt identifier" does not require construction. To the extent the Court wishes to explicitly construe "interrupt identifier," the plain and ordinary meaning may be described as "a value that identifies an interrupt."

### C. "partition identifier", '626 Patent Claims 1, 14; '870 Patent Claims 1, 12, 19

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | "a value that identifies an instance of a virtual machine" |
| Plain and ordinary meaning | |

Defendants propose that the claim term "partition identifier" be construed narrowly to mean "a value that identifies an instance of a virtual machine." Reply at 15. Their proposed construction differs significantly from the plain meaning of "partition identifier" (a value that identifies a partition) and is not justified by any purported lexicography or disclaimer by the patentee. Dkt. No. 45 ("Resp.") at 23-25; Reply at 15-18.

First, Defendants argue that both the '626 and '870 Patents consistently characterize a partition "in relation to virtual machines."[3] Reply at 15. However, the '870 and '626 Patent specifications include teachings that a virtual machine manager or hypervisor may be found at a partition, meaning the "partition identifier" is *not* limited to only identifying a "virtual machine." For example, the patents teach:

> The priority registers may include one or more LPID registers 35, one or more INTLEVEL registers 36 (for storing interrupt priority levels for **hypervisor and guest partitions**).

'626 Patent at 5:4-7.

> If a pending interrupt request from a source has the highest priority . . . and is higher priority than the blocking condition specified for a given partition . . . , it is sent to **the appropriate partition (e.g., active guest OS 31 or VMM 33)** at the targeted virtual core 26.

'626 Patent at 5:18-25; '870 Patent at 4:12-18 (same).

> The conveyed LPID data is used to direct the interrupt to **the recipient partition (e.g., hypervisor or guest)** in the targeted virtual core.

'626 Patent at 5:67-6:3. In view of at least the foregoing, it is apparent that the '626 and '870 Patents do not "repeatedly and consistently characterize a partition" as a virtual machine. Reply at 15 (internal quotations omitted).

Defendants additionally seek to rely on the language of the claims to support their erroneous construction. Reply at 15-16. For example, Defendants note that "[a]ll the independent claims describe using a 'partition identifier' as part of a process of blocking or forwarding an interrupt request to a 'virtual processor.'" Defendants' argument is unpersuasive because it

---

[3] Notably, neither specification uses the term "virtual machine" apart from its use in the context of "virtual machine manager." Conversely, each specification uses the term "virtual computing machine" a single time.

8

erroneously seeks to equate the recited "virtual processor" in the claims with "virtual machine," a term not found in the claims.

Defendants' proposed construction is also unworkable. For example, claim 2 of the '870 Patent provides as follows:

> 2. The method of claim 1, where the one or more special purpose registers at the processor comprise a first hardware register for storing **a stored partition identifier corresponding to a hypervisor running on the processor**.

'870 Patent at 15:27-30; *see also* '626 Patent at 21:12-17 (claim 5 requires, in part, that "the first interrupt request is directed to a hypervisor identified by the partition identifier"). Thus, claim 2 specifies a "partition identifier corresponding to a hypervisor." Substituting Defendants' proposed construction into the claim would yield "a stored [value that identifies an instance of a virtual machine] corresponding to a hypervisor running on the processor." This is plainly erroneous—a "virtual machine" and "hypervisor" are not the same.

Defendants' reference to Plaintiff's infringement contentions also fails. Infringement contentions "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004) (quoting *Network Caching Technology, LLC v. Novell, Inc.,* 2003 WL 21699799, *4-5 (N.D. Cal. 2003)). For example, Defendants rely on brief excerpts from Plaintiff's lengthy infringement contentions (Exhibits 11-16) to support their improper claim construction. Reply at 16, n.7. As one example, Exhibit 11 at element 1[d] on AMD's processors states "[f]or example, a preferred embodiment of the '626 Patent describes a 'partition' as an instance of a Virtual Machine (VM)." Ex. 11 at 10. This statement is not a claim construction, and certainly not lexicography.

Elsewhere, the infringement contentions indicate Plaintiff's view that a partition identifier may correspond to a hypervisor (not just a virtual machine). For instance, in the context of claim 2 of the '870 Patent, Plaintiff states that certain "virtualization architecture contains an internal processor first hardware register for storing ***a stored partition identifier corresponding to a hypervisor*** running on the processor." Ex. 14 at 24. This disclosure is plainly contrary to Defendants' characterization of the infringement contentions.

Defendants further assert that, absent claim construction, the claims are unclear. Defendants argue that it is necessary to delineate the difference between "partition identifier," "thread identifier," and "special purpose register." Reply at 17. Yet, Defendants did not seek construction of these other terms, nor would any construction be necessary. The terms "partition identifier," "thread identifier," and "special purpose register" are taught in the '870 and '626 Patents in accordance with their plain and ordinary meanings, and are terms that are well known in the art. *See, e.g.*, '626 Patent at 15:53-56 ("the target processor stores the interrupt ID, partition ID (LPID), thread ID (VPID), interrupt message data, and other interrupt attributes in memory (e.g., special purpose registers) for further processing.").

Finally, Defendants argue that the intrinsic evidence does not support the plain and ordinary meaning of "partition identifier." Reply at 17-18. Defendants assert "it is not surprising that the cited passages describe 'hypervisors' in the context of partitions: 'hypervisors' manage 'virtual machines,' and partitions in the context of the patents are 'virtual machines.'" *Id.* at 17. This is a mischaracterization. The portions of the specification cited by Plaintiff, such as "the recipient partition (e.g., hypervisor or guest)" ('626 Patent at 6:1-2), make clear that *either* a hypervisor or guest OS may be located at a partition.

Defendants' arguments seeking to equate "virtualization" and "partition" (Reply at 18) are also unavailing because partition and virtualization are simply not synonyms. A partition is a logically separate structure. *See* '870 Patent at 1:13-14 (referring to "logical partitions which virtually operate as a separate computer"); '626 Patent at 1:29-30 (same). Virtualization is the emulation of a hardware structure "by partially or completely virtualized hardware" so as "to behave like the emulated hardware resource." '870 Patent at 5:20-22, 5:46-47; *see also* '626 Patent at 6:51-52, 7:10-11 (similar). Further, even if "partition" and "virtualization" were synonymous, this would not limit the meaning of "partition identifier" to a "value that identifies an instance of a virtual machine."

In view of the foregoing, the term "partition identifier" does not require construction. To the extent the Court wishes to explicitly construe "partition identifier," the plain and ordinary meaning may be described as "a value that identifies a partition."

### D. "the first identifier", '626 Patent Claims 9, 11

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br>Alternatively, the "partition identifier" of claim 1. | Indefinite |

Defendants argue that the term "the first identifier," as found in claims 9 and 11 of the '626 Patent, is too indefinite to be construed. This is erroneous. A person of ordinary skill in the art would readily understand that "the first identifier" of claims 9 and 11 refers back to the "partition identifier" of claim 1.

Claim 1 recites, in part, "comparing the priority value and ***partition identifier against*** at least a stored priority level and ***stored partition identifier***." '626 Patent at 20:54-56.

Claim 9 provides for "signaling the first interrupt request to the targeted thread identified by the thread identifier ***if the first identifier does not match a stored partition identifier*** retrieved

from special purpose registers." '626 Patent at 21:39-42 (emphasis added). Claim 11 is similar with respect to the "first identifier" limitation. *Id.* at 21:51-57. Claims 9 and 11, thus, each specify the comparison of "the first identifier" to "a stored partition identifier." This understanding is consistent with the teachings in the specification. *See* '626 Patent at 18:4-28. As such, one of ordinary skill in the art would understand, in light of the specification and the claims, that only a partition identifier associated with an interrupt request would be compared to a stored partition identifier value. Ex. D ¶ 27.

Defendants offer several arguments in support of their assertion of indefiniteness. First, Defendants argue that because the term "interrupt identifier" is listed first, sequentially, among the three "identifier" terms of claim 1 that "the first identifier" term should be construed to refer back to "interrupt identifier." Reply at 19. Defendants seem to concede that this interpretation is "nonsensical" but regard that as "irrelevant." *Id.* Defendants are not persuasive. Defendants cannot establish indefiniteness by "merely identify[ing] different ways one could interpret" a limitation. *See ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022). "Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction." *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020). Here, Defendants have not even "manufacture[d] a plausible construction."

Defendants' second and third arguments are similarly unpersuasive. Reply at 19-20. Defendants speculate that "the first identifier" could refer back to the "thread identifier" or "stored partition identifier," despite the lack of support and implausibility of such constructions. Again, "merely identify[ing] different ways one could interpret" a limitation does not demonstrate indefiniteness. *ClearOne, Inc.*, 35 F.4th at 1351.

Finally, Defendants point out that "claims 8 and 10 mirror claims 9 and 11 but recite a comparison using 'the partition identifier' instead of 'the first identifier.'" Reply at 20. But there is no teaching in the specification that an "interrupt identifier" or "thread identifier" is compared to a stored "partition identifier." Rather, only the "partition identifier" corresponding to an "interrupt request" is compared to a "stored partition identifier." Given such teachings, construction of "the first identifier" as drawing antecedent basis from the "partition identifier identifying a partition at the processor associated with the first interrupt request" of claim 1 is appropriate.

### E. "the hypervisor", '626 Patent Claim 7

| EireOg's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. Alternatively, "a hypervisor" | Indefinite |

Defendants argue that the term "the hypervisor" as used in claim 7 of the '626 Patent is indefinite. Reply at 20-21. Yet, in connection with other arguments, Defendants argue that "per the specifications, a 'hypervisor' is a 'virtual machine manager'" and that "'hypervisors' manage 'virtual machines.'" *Id.* at 17. Thus, Defendants' understanding of the term "hypervisor" demonstrates that it understands the term with reasonable certainty and the term, as used in claim 7, is not indefinite.

Despite this, Defendants argue that a person of ordinary skill, reading the claims, may see that certain claims use the term "a hypervisor" while claim 7 recites "the hypervisor," and infer that the applicant "chose to claim 'the hypervisor' in claim 7 instead to refer to some undefined structure in claim 1." *Id.* at 21. That argument is unpersuasive. It would be unusual for one of skill in the art to understand the "hypervisor" one way in claims 5, 12, and 18, and another in claim 7. *See, e.g.*, *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("a claim term

13

should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent"). This is particularly so in view of the specification's robust description and frequent use of the term "hypervisor." Defendants fail to show that claim 7 is indefinite by clear and convincing evidence on this basis alone.

Defendants also argue that the function of the "hypervisor" is ambiguous. Reply at 21. For support, Defendants cite to a portion of column two that describes the delivery of an interrupt without hypervisor intervention. *Id.* at 21. There is nothing ambiguous about the cited teaching. It does not suggest that the described system must lack a hypervisor. Indeed, an interrupt directed to a hypervisor operating system is discussed shortly after the portion of the specification cited by Defendants. '626 Patent at 2:48-59. Any ambiguity is resolved by review of the specification and does not demonstrate the claim is indefinite by clear and convincing evidence.

## IV.  CONCLUSION

None of the terms at issue have been the subject of any clear lexicography or disavowal of claim scope. Accordingly, they should be accorded their plain and ordinary meanings.

Dated: April 18, 2025                                    Respectfully submitted,

                                                         */s/ Brett E. Cooper*
                                                         Brett E. Cooper (NY SBN 4011011)
                                                         bcooper@bclgpc.com
                                                         Seth Hasenour (TX SBN 24059910)
                                                         shasenour@bclgpc.com
                                                         Jonathan Yim (TX SBN 24066317)
                                                         jyim@bclgpc.com
                                                         Drew B. Hollander (NY SBN 5378096)
                                                         dhollander@bclgpc.com
                                                         Scott E. Kolassa (CA SBN 294732)
                                                         skolassa@bclgpc.com

                                                         **BC LAW GROUP, P.C.**
                                                         200 Madison Avenue, 24th Floor
                                                         New York, NY 10016
                                                         Phone: (212) 951-0100

                                                         ***Attorneys for Plaintiff EireOg Innovations Ltd.***

## CERTIFICATE OF SERVICE

I certify that this document is being served upon counsel of record on April 18, 2025 via electronic service.

                                                         */s/ Brett Cooper*
                                                              Brett Cooper